(53 South. 675.)

No. 18,277.

COLTHARP v. WEST.

(Nov. 28, 1910.)

*(Syllabus by the Court.)*

1. HOMESTEAD (§ 94*) — JUDGMENT — EXEMPTIONS.

Where, at the moment when the debtor acquires an immovable, there stands recorded against him, in the parish, a judgment, the judicial mortgage resulting from such record attaches to the property, eo instante with the ownership, and he cannot acquire a homestead in such property to the prejudice of such mortgage.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 136–140; Dec. Dig. § 94.*]

2. FIXTURES (§ 18*)—BETWEEN LANDOWNER AND MORTGAGEE—IMPROVEMENTS.

All buildings put on mortgaged real estate, by the owner, are immovable and become subject to the mortgage on the real estate.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 32–41; Dec. Dig. § 18.*]

3. HOMESTEAD (§ 56*)—CHANGE—MORTGAGES.

A residence, exempt as part of a homestead, loses its identity when utterly demolished; and the material, when hauled away and used, in combination with other material, for the construction of another house, on other land, which is subject to a mortgage, does not carry with it the exemption of the homestead house, of which it had formed part, but, as part of the house into which it thus enters, becomes subject to the mortgage resting on the land.

[Ed. Note.—For other cases, see Homestead, Dec. Dig. § 56.*]

Appeal from Ninth Judicial District Court, Parish of Madison; F. X. Ransdell, Judge.

Action by A. S. Coltharp against Margaret E. West. Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered for defendant.

John B. Stone and Pugh, Thigpen & Herold, for appellant. George Spencer and Sny-

der & Gilfoil (M. M. Boatner, of counsel), for appellee.

MONROE, J. Plaintiff enjoined the execution of a moneyed judgment, claiming the seized property as his homestead. Defendant answered, putting at issue the allegations of the petition, and praying that the injunction be dissolved, and that she have judgment against plaintiff and the sureties on his bond (being a bond for $600) for statutory interest and damages. The facts disclosed upon the trial, which are necessary to the decision of the case, are as follows:

In 1882, plaintiff registered a homestead claim on a certain lot, with the improvements thereon, in the village of Milliken's Bend, in the parish of Madison. In January, 1899, J. B. West obtained a judgment against plaintiff for something like $50,000, which was recorded in the same parish, and was revived and reinscribed, by his (West's) executrix, so that it was in full force, as a judgment and judicial mortgage, when, on July 28, 1908, plaintiff bought lots 6 and 7 in the village of Tallulah, some 7 or 8 miles distant from Milliken's Bend, in the same parish, and, having caused the residence in the last-named village to be demolished and the lumber of which it had been composed (or so much of it as was sound) to be hauled, by the wagon load, to Tallulah, used it, in combination with material obtained elsewhere, in the construction of a residence and other buildings on said lots 6 and 7. Those lots, having been bought on credit, are incumbered with the vendor's privilege, and the main contention here relates to the status of the house, plaintiff asserting that it is, "practically, the identical house" which formed part of his homestead at Milliken's Bend, and enjoys the same exemption, whilst defendant denies the identity and alleges other reasons why such exemption should not be accorded. Plaintiff rests his contentions upon the propositions that the Milliken's Bend

house was exempt as a homestead; that, by reason of the threatened caving of the river bank at that point, it became necessary, in order to save it from destruction, to remove it to another place; that he did remove it, in the manner stated; and that it carried its status and exemption with it to Tallulah. Conceding, for the purposes of the argument, the exemption of the house at Milliken's Bend, we do not find the other propositions sustained by the evidence or the law. That house was nearly half a mile back from the river bank—further back than any other house in the village—and plaintiff was unable to mention any other house that has been moved for fear of the caving of the bank. Being asked why he caused his house to be taken down and moved to Tallulah, he replied:

"One reason was that the caving banks were encroaching and it looked like, sooner or later, we would be thrown out. While I had time, I wanted to get away, before the house caved in the river or was thrown out by the levee."

Being asked what his other reasons were, he answered:

"One was that the town had materially gone down, owing, principally, to the caving bank."

But, a little further on, in answer to the question, "What was the cause of the business going down there," he replied:

"The principle cause was that A. S. Coltharp & Co. and Coltharp Bros. had to make a concession (cession?) to their creditors that year (1892) and, in 1893, they were all overflowed and knocked out of business. When they left Milliken's Bend, it went down, because they did a big credit business and brought more or less trade to the town."

He also testified that, while Milliken's Bend has gone down, Tallulah has grown a great deal in the last few years. Being asked whether the house to be built at Tallulah was to be a reproduction of the other, he answered:

"It was not to be an exact reproduction. It had to be a part like the original, but it had to be reduced in size in order to make the material come out after some had been thrown out."

He also testifies that he put about 3,000 feet of new lumber into the house at Tallulah, covered it with new shingles, used new lime, cement, sand, nails, paint, wall paper, etc.; but he is unable to say, with certainty, how much the new material cost, nor could he say how many feet of old lumber were used. He does say, however, that the house at Milliken's Bend was torn to pieces, and that the lumber was hauled, in wagons, as material. Without, therefore, discussing the question whether, if the house at Milliken's Bend had been moved to Tallulah and placed upon the lots 6 and 7, which plaintiff had acquired in that village, it would have carried with it the exemption accorded to the homestead of which it formed part, our conclusion is that it was not so moved. On the contrary, the house was utterly demolished; the lumber of which it had been built was culled; that which was unsound was thrown away or destroyed; and only that which was sound was hauled, as material, to Tallulah, where, as we have stated, in combination with material obtained elsewhere, it was used in the construction of another house. To argue that the house that was thus demolished and that which was constructed are identical is equivalent to saying that things which are not the same are the same.

As to the law applicable to the facts stated, we are unable to adopt the view that it was, or is, within the contemplation of the Constitution of 1879, or of the present Constitution, that the homestead exemption shall extend to the material of which the homestead residence is composed and shall follow it away from the homestead land and into other buildings erected upon other land, without regard to rights which third persons may have acquired upon, and in, such other land. The following propositions are established by the law and jurisprudence of this state, to wit:

"All buildings put on mortgaged real estate, by the owner, are immovable, and become subject to the mortgage on the real estate." New Orleans Nat. Bank v. Raymond, 29 La. Ann. 355, 29 Am. Rep. 335.

Where, at the moment when the debtor acquires an immovable, there stands recorded against him, in the parish, a judgment, the judicial mortgage, resulting from such record, attaches to the property, eo instante with the ownership, and he cannot acquire a homestead in such property, to the prejudice of such mortgage. Taylor v. Saloy, 38 La. Ann. 62.

"Under the present, as under the pre-existing law, the debtor, setting up the homestead exemption, as against a creditor seeking to enforce a mortgage, must show that he occupied the property as a residence, as well when the mortgage attached as when it was sought to be enforced." Bank v. Stansbury, 110 La. 301, 34 South. 452; Ellis v. Freyhan & Co., 124 La. 53, 49 South. 975.

As the propositions thus established are inconsistent and irreconcilable with those upon which plaintiff relies, the judgment must go against him.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of Mrs. Margaret West, testamentary executrix (defendant in injunction), and against A. S. Coltharp (plaintiff), dissolving the injunction herein issued, and condemning said plaintiff, together with George Spencer, M. H. Coltharp, Jeff. B. Snyder, and Paul Flemming, sureties on the injunction bond, in solido, up to the amount of said bond ($600), to pay the defendant interest, at the rate of 8 per cent. per annum on the amount of the judgment enjoined; it being the intent and meaning of this decree that the plaintiff in injunction shall be condemned for the whole amount of said interest, from the date of the issuance of the injunction until its final dissolution, and that the sureties shall be condemned, in solido with him, to the extent of $600. It is further adjudged that said plaintiff pay all costs.